UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| WANDA ALLARD POWERS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:15-cv-00167-jgm |
| | : | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

MEMORANDUM AND ORDER
(Docs. 6, 8)

I.   Introduction

Plaintiff Wanda Allard Powers (Powers) brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the Commissioner of Social Security's (Commissioner) denial of her application for disability insurance benefits and supplemental security income.  Pending before the Court are Powers' motion seeking an order reversing the Commissioner's decision (Doc. 6 (Doc. 6-1 Memorandum)), and the Commissioner's motion seeking an order affirming her decision (Doc. 8).  For the reasons set forth below, Powers' motion to reverse is granted, the Commissioner's motion to affirm is denied, and the matter is remanded for further proceedings and a new decision.

II.  Background

On April 17, 2012, Powers filed an application for disability insurance benefits, and on April 30, 2012, she filed for supplemental security income benefits alleging she became disabled as of November 30, 2011.  (A.R. 202-11, 214-15.)  She later amended her onset date to March 23, 2012.  Id. at 67.  On July 26, 2012, her applications were denied, id. at 107-15, and, on

September 28, 2012, were denied again on reconsideration, id. at 56-62.  Powers filed a timely request for an administrative hearing, id. at 154-55, which was held by Administrative Law Judge ("ALJ") Paul Martin on December 27, 2013, id. at 63-106.  She appeared with a representative at the hearing and testified.  Id.  On January 31, 2014, the ALJ issued a decision concluding Powers was not disabled from the revised alleged disability onset date.  Id. at 17-35.  The Appeals Council denied her timely request for review on May 19, 2015, and the ALJ's decision became the final decision of the Commissioner.  Id. 1-5.

On July 17, 2015, Powers timely filed this action.  (Doc. 1.)  She raises three challenges to the ALJ's decision:  (1) the ALJ erred by using lay knowledge to assess her residual functional capacity ("RFC"); (2) the ALJ failed to consider her proctalgia fugax in combination with other impairments; and (3) the ALJ erred in his credibility assessment.  (Doc. 6-1.)

Powers was born on March 16, 1969.  (A.R. 318.)  She has a high school education and past relevant work as a short-order cook, deli worker, cashier, hospital cleaner, and baker helper.  Id. at 28.  From March 29 to April 6, 2005, she was admitted for inpatient care for depression after complaining of suicidal thoughts.  Id. at 291-92, 303.[1]  On February 2, 2012, she underwent surgery to remove her gallbladder.  Id. at 608.

On March 23, 2012, Powers saw nurse practitioner ("NP") Boseung Halliwell who diagnosed bipolar I disorder, most recent episode depressed, and post-traumatic stress disorder ("PTSD"), and assessed a global assessment of function ("GAF") score of 50.  (A.R. 384.)  On March 28, she first saw Jessica Dambach, a licensed mental health counselor, who recommended

---

[1] As did Powers, the Court relates only her relevant medical history for present purposes.  See Doc. 6-1 at 2 n.2.

2

weekly therapy sessions.  Id. at 389.  The record contains Dambach's progress notes spanning March 28, 2012 through May 6, 2013.  See id. at 389-411, 483-92, 511-12, 519-22, 645-93.

Also on March 28, Powers treated with her primary care physician, Dr. Sepinoud Bazel, for hemorrhoids, complaining it felt "like her bottom is on fire" and of painful defecation with blood in her stool. (A.R. 318.)  She had a small external hemorrhoid and likely internal hemorrhoids as well.  On May 3, she treated with Dr. David Butsch for painful bowel movements and a "shooting pain from the rectum that goes up." Id. at 705.  Upon examination, she had tenderness with the suggestion of a small sentinel pile and was assessed with internal hemorrhoids and a posterior anal fissure.  Id.  She stated she had to be home to have a bowel movement.  Id. at 707.

On September 28, 2012, state agency medical consultant Dr. Elizabeth White reviewed the evidence of record and opined Powers' only medically determinable physical impairment was hypothyroidism and that it was non-severe.  Dr. White noted there was minimal updated medical evidence of record.  She stated Powers was seen in July 2012 for an infected toe nail and there were "[n]o other complaints;" there is no indication Dr. White reviewed Dr. Butsch's diagnosis of anal fissure.  (A.R. 121.)  Also on September 28, state agency medical consultant Dr. Shapiro reviewed the evidence of record and opined Powers had severe medically determinable psychological impairments of affective and anxiety disorders with moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace.  Id. at 122.

On October 8, 2012, Powers contacted Dr. Butsch's office regarding her worsening anal fissure. (A.R. 703.)  She saw Dr. Butsch again on October 17, stating walking bothered her and the pain came with the sensation of and having a bowel movement.  Id. at 706.  Upon examination there was marked tenderness and the anal fissure was as before.  Id.  On November 7, Dr. Butsch

noted Powers had "diffuse anal tenderness consistent more [with] spasm than fissure," and assessed proctalgia fugax. She complained of bowel movements feeling like razor blades and throbbing in a vein. Id. The government describes proctalgia fugax as a "severe, episodic, rectal and sacrococcygeal pain." (Doc. 8 at 12 n.5 (citing Wikipedia).)

On January 14, 2013, Powers told Dr. Butsch she "would like to figure out what is going on" because she was "healed" but she stopped diazepam and the pain came back with diarrhea, frequent bowel movements, and blood in her stool. Upon examination, he noted anal spasm/tenderness as before but not so severe. (A.R. 704.) On March 1, Powers reported she had not taken her valium lately, as it had run out, but that it "certainly helped," and she felt "slightly uncomfortable at times" but "nothing like before." Id. at 702, 704. Upon examination, Dr. Butsch noted circumferential spasm and tenderness as before, again assessing Powers with proctalgia fugax. He prescribed valium one to two times per day. Id. at 702. On March 4, Powers' therapist Dambach noted she was in pain from the anal fissure and that it causes her stress. Id. at 670.

On July 24, 2013, Powers treated with Dr. Bazel complaining of bowel movement problems, shooting pains and blood in her stool. Regarding urology, she reported noticing some odor to her urine and that it was cloudy. He assessed, inter alia, urinary frequency. (A.R. 695.)

III.  Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability claims. Butts v. Barnhart, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not, the ALJ determines whether the claimant has a "severe impairment." Id. §§ 404.1520(c), 416.920(c). If the ALJ finds the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(d), 416.920(d). A claimant is presumptively disabled if the impairment meets or equals a listed impairment. Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." Id. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, Butts, 388 F.2d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In reviewing the Commissioner's disability decision, the court limits its inquiry to a "plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the

record to support such a decision.  42 U.S.C. § 405(g).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Commissioner, as the trier of fact, resolves evidentiary conflicts and assesses credibility.  See Richardson, 402 U.S. at 399.  Under this "very deferential standard of review," once an ALJ has found facts, a court can reject those facts "only if a reasonable factfinder would have to conclude otherwise."  Brault v. Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted); 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

IV.     Discussion

Powers asserts the ALJ erred by using lay knowledge to assess her RFC, in failing to consider her proctalgia fugax in combination with her other impairments, and in his assessment of her credibility.  (Doc. 6-1.)  The Commissioner contends that substantial evidence supports the ALJ's RFC determination and credibility assessment.  (Doc. 8.)

The ALJ found Powers had not engaged in substantial gainful activity since November 30, 2011, and had severe impairments of bipolar disorder, PTSD, anal fissure/hemorrhoids, and obesity.  (A.R. 23.)  The ALJ determined Powers retained the residual functional capacity to perform a full range of work at all exertional levels but she must be able to use a bathroom for five minutes at least a couple times if working during a morning shift; otherwise, she needs close access to bathroom facilities, is limited to simple 1-3 step tasks in an environment without fast-paced production requirements, is limited to simple work-related decisions and routine workplace changes.  She can maintain concentration, persistence, and pace for two-hour periods but is limited to occasional

interaction with coworkers and supervisors. She should work mostly on her own, with no interaction with the general public. Id. at 25. While the ALJ determined Powers was unable to perform any past relevant work, considering her age, education, work experience, and RFC, he found she is capable of making a successful adjustment to other jobs existing in significant numbers in the national economy. Accordingly, he found she was not disabled. Id. at 28-29.

An ALJ has an obligation to obtain necessary medical records to complete a proper assessment of a claimant's RFC. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Medical records should include statements about what a plaintiff can still do despite impairments and the Social Security administration "will request a medical source statement about what you can still do." 20 C.F.R. § 404.1513(b). The regulations explain an ALJ will consider RFC assessments made by State agency medical and psychological consultants. Id. § 404.1513(c).

The ALJ gave Dr. White's opinions "some" weight, instead of "significant" weight, to the extent she found Powers "not disabled and no severe foot impairment or thyroid impairment," but found "in light of [Powers'] updated medical records and testimony, that she has a severe impairment due to intestinal problems, and have reflected functional limitations noting this in the [RFC]." (A.R. at 27.) Dr. White did not examine Powers and it is unclear whether she considered all the relevant medical information, particularly Dr. Butsch's diagnosis of proctalgia fugax. See Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) (holding opinion not "supported by evidence of

record" where it was unclear whether doctor reviewed all relevant medical information). Her report did not include a physical RFC assessment. Compare A.R. at 123 (Dr. Shapiro's Report containing a mental RFC assessment).

The ALJ's determination that Powers retained the ability to perform a full range of work but with the requirement she work in close proximity to bathroom facilities, especially in the morning, is not supported by a medical opinion. He points to no opinion from any of Powers' treating physicians regarding her functional abilities and Dr. White's report does not contain such an RFC assessment. The determination Powers has a severe impairment due to intestinal problems and the associated limitations in her RFC appear to be the result of the ALJ's assessment of her medical records. Accordingly, substantial evidence does not support the ALJ's RFC assessment; the ALJ's failure to obtain an adequate medical assessment of Powers' functional abilities and concomitant failure to support his RFC determination with proper expert medical evidence was legal error.

The Commissioner's statement that the ALJ resolves conflicts in the medical evidence and argument that the ALJ's RFC finding need not track any one medical opinion (Doc. 8 at 20) presupposes there are conflicts in the medical evidence and medical opinions on claimant's RFC in the record. As discussed above, that is not the case here. Further, the Commissioner's reliance on Powers' medical records predating her alleged onset date to argue her physical examinations were "essentially unremarkable" is not persuasive where her diagnosis of proctalgia fugax occurred nearly a year later. See id. (citing medical records from late 2011 and early 2012).

Remand is necessary to afford Dr. White, or another state agency consultant, an opportunity to review the full record, including Dr. Butsch's diagnosis of proctalgia fugax, prior to preparing a new report that includes a physical RFC assessment. As Powers notes, it is not for the ALJ to make a medical determination in the first instance.

In light of the Court's determination regarding Powers' RFC, the Court declines to consider Powers' claim the ALJ erred in his credibility determination.  The Court notes an ALJ must evaluate the credibility of a claimant and arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of symptoms.  <u>Lugo v. Chater</u>, 932 F. Supp. 497, 503 (S.D.N.Y. 1996) (citation omitted).  Here, the ALJ concluded Powers' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the RFC; he found her allegations of pain and physical and mental limitations to be "somewhat overstated and exaggerated." (A.R. 648.)  Because the Court has determined the RFC was not supported by appropriate medical evidence, it is for the ALJ on remand to determine whether her statements are consistent with a properly supported RFC.

V.  <u>Conclusion</u>

The ALJ committed legal error because he failed to obtain an adequate medical assessment of Powers' functional abilities and failed to support his RFC determination with proper expert medical evidence.  Accordingly, Powers' motion for an order reversing the decision of the Commissioner (Doc. 6) is GRANTED, the Commissioner's motion seeking an order affirming her decision (Doc. 8) is DENIED, and the matter is remanded for further proceedings and a new decision in accordance with this ruling.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 20th day of April, 2016.

/s/ J. Garvan Murthа
Honorable J. Garvan Murtha
United States District Judge